UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

POLLY A. ENGEBRETSON, )
)
    Claimant, )
)
v. ) Case No. CV407-047
)
MICHAEL J. ASTRUE, )
*Commissioner of Social Security*, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

On April 10, 2007, Polly A. Engebretson filed a complaint with this Court appealing the Social Security Commissioner's denial of her application for disability benefits. (Doc. 1.) For the reasons set forth below, the Court should **REMAND** the case to the Commissioner for further proceedings.

## I. BACKGROUND

On August 28, 2003, claimant applied for disability and disability insurance benefits, alleging that she became disabled on March 21, 2002.

(Doc. 9 at 14.) The Social Security Commissioner denied her application, first on October 14, 2003 and again upon reconsideration on January 30, 2004. (Id.) An Administrative Law Judge ("ALJ") held a hearing on November 30, 2005, and issued a decision denying claimant's benefits applications on March 29, 2006. (Id. at 21.) After the appeals council rejected claimant's request for review, the ALJ's decision became the final decision of the Commissioner. (Id. at 3.) Claimant then filed a complaint in this Court, contending that the ALJ's decision is incorrect as a matter of law and is not supported by substantial evidence. (Doc. 1.)

## II. LEGAL PRINCIPLES

### A. Standard of Review

Affirmance of the ALJ's decision is mandatory if the ALJ's conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and

citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." Id. at 1158-1159. The substitution of this Court's judgment for that of the Commissioner is not allowed. Barnes v. Sullivan, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

B.   **Burden of Proof**

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether claimant has met her burden of proof, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that she has not engaged in substantial gainful activity. Jones, 190 F.3d at 1228. At step two, she must demonstrate a severe impairment or combination of impairments. Id. Then, at step three, if the claimant's impairment meets or equals a listed impairment, she is automatically found disabled.

Id. If not, she must advance to step four, which requires her to prove her inability to perform past relevant work. Id. If she cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." Id.

## III. ANALYSIS

Claimant Engebretson is a forty-three-year-old female who has completed three years of college. (Doc. 11 at 2.) She worked in the banking industry for many years: as a teller from 1984-1995, a mortgage loan processor from 1995-1997, and a loan closer from 1997-2002. (Doc. 9 at 67.) She began to experience severe neck pain in 1999, which she indicated may have resulted from a severe automobile accident in 1989 where she was ejected from her car and sustained a pelvic and right-forearm fracture. (Id. at 393.) In 2000, claimant underwent surgery for the condition. (Id. at 385.) Dr. James Lloyd fused the C5-6 cervical vertebrae in her neck. (Id.) After the cervical fusion, she returned to work in just six weeks. (Id. at 18.) Several months later, she began having pain in her lower back that ran down her legs to her ankles and

big toe. (Doc. 11 at 2.) Pursuant to her doctor's advice, her work was restricted to part-time in 2001. (Id.; Doc. 9 at 495.) She stopped working completely in March 2002 when her physical pain became overwhelming. (Doc. 11 at 2.) In September 2002, claimant had her first lumbar fusion, which did not relieve her back pain. (Id.) She had a second lumbar fusion in December 2003, which she also alleges failed to ease her pain. (Id.)

On August 28, 2003, claimant filed an application for disability benefits, alleging disability due to affective and back disorders and potential lupus. (Doc. 9 at 65-74.) In evaluating her claim, the ALJ followed the required five-step evaluation process. First, he determined that claimant had not engaged in substantial gainful activity at any time relevant to his decision. (Id. at 16.) Second, he found that claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine, dysthymic disorder, and depression. (Id.) Third, he found that claimant did not automatically qualify for disability benefits because her impairments were not the equivalent of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) Fourth, the ALJ found that claimant was incapable of performing her past relevant work.

(Id.) Finally, he found that claimant "has the residual functional capacity to perform light exertional work with occasional stooping." (Id.) Based upon his findings, he concluded that claimant was not entitled to receive disability benefits pursuant to the Social Security Act. (Id.)

Claimant contends that the ALJ's analysis was not supported by substantial evidence because he: (1) failed to evaluate all evidence of her pain in determining her ability to function, and (2) improperly determined her residual functional capacity ("RFC"). (Doc. 11 at 1.) The Court will consider both of claimant's arguments in turn.

## A. Claimant's Subjective Complaints of Pain

Claimant contends that the ALJ failed to evaluate all of the subjective evidence of her pain. (Id. at 13.) She criticizes the ALJ for focusing improperly only "on the most recent objective findings" rather than considering her subjective complaints.[1] (Id.)

---

[1] Specifically, she cites as error the ALJ's: (i) failure to make a finding as to whether medications and physical therapy alleviated her symptoms; (ii) failure to acknowledge that persistent attempts to obtain pain relief lend support to her allegations of intense and persistent symptoms; (iii) inaccurate reporting of her medication regimen; (iv) failure to mention that her typical pain was higher than her pain on the hearing date; (v) inaccurate reporting of her activities; (vi) failure to evaluate her work history correctly; (vii) improper evaluation of her treatment record; and (viii) failure to provide the reasoning supporting his credibility conclusions. (Doc. 11 at 12-19.) Rather than address each ground independently, the Court will address this ground for relief in a more general manner.

The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant attempts to establish disability through her own subjective testimony of pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of: (1) an underlying medical condition, and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Id. at 1223; Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986); Hand v. Bowen, 793 F.2d 275, 276 (11th Cir. 1986); 20 C.F.R. §§ 404.1529 and 416.929. Although "[t]he ALJ must consider the claimant's subjective testimony of pain," Norris v. Heckler, 760 F.2d 1154, 1157 (11th Cir. 1985), the issue of credibility is reserved to the Commissioner. Boyd v. Heckler, 704 F.2d 1207, 1210-1211 (11th Cir. 1983). "[A]n ALJ may properly challenge the credibility of a claimant who asserts he is disabled by subjective complaints." Norris, 760 F.2d at 1157; Smallwood v. Schweiker, 681 F.2d 1349, 1351 (11th Cir. 1982). However, if the ALJ chooses to discredit a claimant's testimony regarding pain, he must "articulate 'explicit and adequate' reasons for doing so." Elam v. R.R.

Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (quoting Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988)); Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).

Although, the ALJ recognized that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms," he found that her "statements concerning the intensity, duration, and limiting effects of these symptoms [were] not entirely credible." (Doc. 9 at 19.) Specifically, he noted that there was no evidence that claimant had received treatment for her back pain since October 2004. (Id.) The ALJ's assertion that claimant did not seek medical treatment for her back pain since October 2004 is misleading at best. The ALJ acknowledged that she had no health insurance for a large part of that time period.[2] (Id. at 18.) When she lacked insurance coverage, she treated her pain by taking all of the pain medication that her doctors had prescribed her prior to her insurance lapse. (Id. at 502.) When she ran out of those prescription pain relievers, she began taking

---

[2] The ALJ stated that claimant had no doctor visits from January 2004 to October 2005 due to lack of insurance. (Doc. 9 at 18.) It is clear from the record, however, that claimant had several doctors visits during 2004. (Id. at 139, 140, 141, 142, 143, 144.) Claimant lost her health insurance when her husband lost his job in December—not January—2004, and her insurance coverage resumed in October 2005. (Id. at 489-99.)

8

over-the-counter medication and her mother's Darvocet. (Id.) There is no indication anywhere in the record that she abandoned treatment. Furthermore, claimant testified at the hearing that she had sought treatment and received pain medication shortly before the ALJ's hearing in 2005, directly contradicting his assertion to the contrary.[3] (Id. at 503-04; 460-79.)

Equally concerning is the ALJ's omission of several important facts. In his decision, he noted that "[o]n a scale of 1 to 10, [claimant] rated her pain level on today at 5." (Id. at 18.) He neglected to mention, however, that claimant testified that "today" was a good day and that on good days her pain level is at a five, but, on most days, her pain level is at eight, nine, or ten. (Id. at 503.) Although the ALJ mentioned that claimant shops about once a week for groceries, he did not mention that she testified that she only goes shopping when she absolutely has to and that when she goes she is typically accompanied by her mother or husband. (Id. at 18, 489-90.) Such a "selective description of

---

[3] The ALJ's hearing occurred on November 30, 2005. (Doc. 9 at 481.) The record reveals that claimant was prescribed Demerol and Vicodin for pain shortly before the hearing. (Id. at 472, 467.) She informed the ALJ at the hearing that she had recently been prescribed hydrocodone (the Court presumes she was referring to the Vicodin, as hydrocodone-acetaminophen is Vicodin's generic name). (Id. at 504.)

9

[claimant's] activities is disingenuous, as [the ALJ] accepts her listing of her activities, but not her limiting descriptions of them."[4] Horton v. Barnhart, 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006).

Based upon the inconsistencies in the record and the ALJ's selective description of claimant's activities, the ALJ has not, in this Court's opinion, "articulate[d] 'explicit and adequate' reasons for [discrediting claimant's subjective testimony of pain." Elam, 921 F.2d at 1215. Consequently, the case should be remanded so that the ALJ can enter a new decision after examining the *entire* case record.

### B.  Residual Functional Capacity Assessment

The ALJ considered the medical evidence and determined that claimant retained the residual functional capacity to perform light work with occasional stooping and had a limited, but satisfactory, ability to maintain attention and concentration. (Doc. 9 at 18.) In reaching his determination, he considered limitations stemming from degenerative

---

[4] The ALJ also failed to mention claimant's testimony that she has difficulty stooping; she stated that she must use a long shoehorn to put on her shoes and a "grabber" to pick up items lying on the floor. (Id. at 489-501.) And he omitted her testimony stating that she does not clean, sweep, mop, vacuum, do dishes, or make her bed. (Id. at 489.) Although the ALJ was not required to recite every fact in the record in reaching his decision, his omission of these and other facts suggests to the Court that the "ALJ's opinion was a result driven recitation of only those facts supporting a finding that plaintiff was not disabled." Blanks v. Barnhart, 401 F. Supp. 2d 1223, 1229 (N.D. Ala. 2005).

disc disease of the lumbar spine, dysthymic disorder, and depression. (Id. at 16-18.) Claimant alleges, however, that the ALJ incorrectly assessed her RFC. (Doc. 11 at 19-20.) Specifically, she contends that the ALJ erred by: (1) failing to perform a function-by-function assessment and provide a narrative discussion explaining his reasoning; (2) relying upon the incomplete and unsupported opinions of non-examining consultants; and (3) failing to consider all of her impairments in combination, including her lupus. (Id. at 20-24.)

1. *Function-by-Function Assessment*

"The RFC assessment [at step five of the evaluation process] is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling ("S.S.R.") 96-8, 1996 WL 374184, *3 (July 2, 1996). The ALJ must consider an individual's exertional and nonexertional functions in order to determine which exertional level is appropriate and whether the individual is capable of performing the full range of work contemplated by the exertional level. Id. Exertional capacity addresses an individual's abilities to perform each of seven strength demands: sitting, standing,

walking, lifting, carrying, pushing, and pulling. Id. at 5. According to SSR 96-8, the ALJ must consider each function separately. Id.

In the ALJ's discussion of step 5, he stated that "claimant alleged that she can stand/walk no more than 5 minutes; sit 30 minutes at one time; she must elevate her feet on a daily basis; and she has to lie down during the day about 6 hours due to pain." (Doc. 9 at 18.) Next, he noted that the "State Agency consultants determined the claimant could do light exertional level work with occasional stooping."[5] (Id. at 19.) Then he summarily credited the state consultants' findings, without discussing each strength demand in turn. (Id.) In fact, he entirely omitted any discussion of claimant's ability to lift, carry, push or pull. Based upon the ALJ's brief discussion, the Court cannot determine whether his function-by-function assessment was supported by substantial evidence.

2. *Assessment of State Agency Consultants*

In the ALJ's decision, he stated that he gave "great weight to the State Agency consultant's opinion because it is fully justified and

---

[5] As noted above, the ALJ did not discuss claimant's testimony at the hearing that she must use a long shoehorn in order to put on her shoes (Doc. 9 at 489), and that she uses "grabber" to avoid bending over to lift things off of the ground (id. at 501). Certainly such testimony should have been considered before summarily concluding that claimant could perform occasional stooping.

consistent with other substantial objective evidence in the case record." (Id. at 19.) Claimant notes that despite the ALJ's conclusion that the consultants' opinions were "fully justified," none of the consultants provided any explanation for the limitations upon which the ALJ relied. (Doc. 11 at 21.)

Federal regulations require the ALJ to consider the findings of fact made by state agency medical and psychological consultants. S.S.R. 96-7p, 61 Fed. Reg. 34483-01, 34488 (July 2, 1996); 20 C.F.R. §§ 404.1527(f) and 416.927(f). ALJ judges are not bound by state agency findings, but they may not ignore them and must explain the weight given to the opinions in their decisions. Id. The ALJ "must consider the findings of state agency medical and psychological consultants . . . as opinion evidence." 20 C.F.R. § 416.927(f)(2)(i); Ogranaja v. Comm'r of Soc. Sec., 186 F. App'x 848, 850 (11th Cir. 2006). But "because nonexamining sources have no examining or treating relationship with [the claimant], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(d)(3).

The sole explanation underlying the most recent state consultant's determination that claimant had the ability to perform light work is a note from January 2004 in which he stated: "[p]rior to MVA on 10/22/03, capable of light work. Had re-fusion at L5-S1 on 12/30/03. With normal healing, should be capable of full range of light work within six months after surgery." (Doc. 9 at 421.) Despite the instructions requiring the consultants to describe "how the evidence substantiates" their conclusions, neither the most recent consultant nor the earlier consultant cited to any evidence whatsoever. (Doc. 9 at 436.) As the state examiners provided no explanations for their findings, their opinions were not entitled to the "great weight" given them by the ALJ. (Id. at 19.)

Considering the record as a whole, it is not clear what level of work, if any, claimant can perform. None of the treating physicians expressed an opinion regarding whether claimant has the ability to work, and the state consultants' evaluations alone simply cannot demonstrate "substantial evidence," as they are the unsupported conclusions of non-treating, non-examining physicians. Johnson v. Barnhart, 138 F. App'x 266, 270-71 (11th Cir. 2005); Spencer v. Heckler, 765 F.2d 1090, 1094

(11th Cir. 1985) (noting that to attempt to evaluate disability without personal examination where a non-examining physician merely checked boxes on a form without explaining how he reached his conclusions "is medical sophistry at its best"). Accordingly, the ALJ's decision must be further developed before it can be said to be supported by substantial evidence. 20 C.F.R. § 404.1527(c) (noting that if the ALJ does not have sufficient evidence to decide whether a claimant is disabled, he should "try to obtain additional evidence under the provisions of §§ 404.15.12 and 404.1519").

3. *Consideration of Combination of Impairments*

Claimant alleges that the ALJ failed to consider all of her impairments in combination. (Doc. 11 at 23-34.) Specifically, she alleges that the ALJ ignored evidence of her lupus diagnosis. (Id.)

The Commissioner argues that the failure of the ALJ to consider claimant's lupus was not error because she was actually diagnosed with "acute dermatitis due to solar radiation" and no functional limitations were imposed by this condition. (Doc. 13 at 7-8.) Despite the

government's contention, claimant was diagnosed with lupus.[6] (Doc. 9 at 201, 202, 240; see id. at 147, 210, 231, 239, 319, 320.) Additionally, the record makes clear that claimant complained of pain that her doctors believed to be attributed to the lupus. For example, in August 2003, claimant complained to Dr. Lloyd of joint discomfort in her hips, knees, and ankles, and as a result, he referred her to a rheumatologist "concerning possible arthritis due to lupus." (Id. at 147.) In September 2004, claimant went to see Dr. Boyd complaining of bilateral knee and ankle pain. (Id. at 202). He placed her on Vioxx, noting her earlier diagnosis of lupus. (Id.) In December 2004, Dr. Lloyd once again saw claimant and noted that she continued to have discomfort in her neck, right arm, knees, and ankles. (Id. at 139.)

In determining whether physical or mental impairments are of sufficient medical severity that they could be the basis for disability eligibility, the ALJ must consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923.

---

[6] Defendant cites to lab results entered on 7/10/2003 in support of its contention that claimant does not suffer from lupus. (Doc. 9 at 243.) The results from the same lab, twelve days later and three pages earlier in the record, clearly show a diagnosis of "lupus erythematosus." (Id. at 240.) Before submitting future briefs to this Court, counsel is expected to read the *entire* case record.

However, when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity. S.S.R. 96-8, 1996 WL 374184, *1 (July 2, 1996). Here, the record clearly demonstrates that claimant suffers from lupus and sought medical relief for the condition on several occasions. Furthermore, she raised the issue in her "Reconsideration Disability Report" in October 2003. (Doc. 19 at 87.) Since the ALJ "must address the degree of impairment caused by the 'combination of physical and mental medical problems,'" Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986), it was error for him to fail to consider her lupus.

## III. CONCLUSION

"Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a

whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting Stawls v. Califano, 596 F.2d 1209, 1214 (4th Cir. 1979)). As the Commissioner has not made such a showing, his decision is not supported by substantial evidence. Consequently, the Court should **REMAND** this case to the ALJ, pursuant to sentence four of 42 U.S.C. § 405(g), so that he can make a decision based on an accurate and thorough consideration of the entire case record.

**SO REPORTED AND RECOMMENDED** this 24th day of July, 2008.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**