UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

POLLY A. ENGEBRETSON,

Plaintiff,

v.                    407CV047

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

Defendant.

## ORDER

## I. INTRODUCTION

In this social security disability benefits case, the Magistrate Judge (MJ) has filed a Report and Recommendation (R&R) advising this Court to remand these proceedings to the Social Security Administration (SSA) Commissioner for further proceedings. Doc. # 18. The Commissioner objects. Doc. # 22.

## II. BACKGROUND

Polly Engebretson, a 44 year old female who completed 3 years of college, doc. # 11 at 2, worked until 2002 as a bank teller, mortgage loan processor, and loan closer. Doc. # 9 at 67. In 1999, she suffered severe neck pain which she indicated may have resulted from a 1989 automobile accident in which she was ejected from her car and sustained a pelvic and right forearm fracture. *Id.* at 393. In a 2000 surgery for this condition, her doctor fused the C5-6 cervical vertebrae in her neck, *id.* at 385, and she returned to work six weeks later. *Id.* at 494.

Months later, however, plaintiff began to experience pain in her lower back that ran down her legs, ankles, and big toe. Doc. # 11 at 2.

Pursuant to her doctor's advice, she limited her work to part time in 2001. *Id.*; doc. # 9 at 495. She stopped working completely in 3/02, when she claims her physical pain became overwhelming. Doc. # 11 at 2. Engebretson later underwent two lumbar fusion surgeries -- in 9/02 and 12/03 -- but says neither succeeded in easing her back pain. *Id.*

On 8/28/03, plaintiff applied for social security disability and disability insurance benefits, claiming that she became disabled on 3/21/02. Doc. # 9 at 14. She cited her inability to work due to degenerative disc disease, back pain, and depression. *Id.* at 66. Engebretson also stated that she developed skin problems, and her doctor referred her to a dermatologist to be tested for lupus. *Id.* at 73. The Commissioner denied her application on 10/14/03. *Id.* at 14. She sought reconsideration and claimed that her condition had gotten worse due to a car wreck and that she had seen a doctor for treatment of lupus. *Id.* at 84, 87. The Commissioner denied reconsideration on 1/30/04. *Id.* at 14.

Engebretson petitioned for an administrative hearing on 3/1/05. *Id.* at 93. There she submitted questionnaire responses in which she claimed that she had stopped working due to degenerative disc disease, depression, and lupus. *Id.* at 94. At an 11/30/05 SSA hearing, plaintiff testified that she: had difficulty going up the step to her house, *id.* at 484; stopped working on 3/02 due to physical pain, *id.* at 487; was told by her doctor not to lift anything over 5 pounds; was prescribed physical therapy and pain medications, *id.* at 488; drives with difficulty not more than once a week, typically for 3 miles, *id.* at 488-89; can bathe and dress herself, *id.* at 489; uses a long shoehorn to put on her shoes, *id.* at 489; prepares food for herself once a week, *id.* at 498; does not do any housekeeping, yard work, or laundry, *id.* at 489-90; goes shopping only when she has to and is typically accompanied by her husband or mother, *id.* at 489-90; eats out about once a month, *id.* at 490; used to enjoy golfing, camping, and

swimming prior to her injury but no longer does any of these activities, *id.* at 490-91; was not injured by any particular event, *id.* at 491; cannot stand longer than 5 minutes or sit more than 30 minutes, constantly has to change her position, and has to elevate her feet when sitting, *id.* at 491; lies down 12 hours a day, 6 hours between 9 a.m. and 5 p.m, *id.* at 492-93; had back surgery twice that did not help, *id.* at 493; began having pain in her lower back, legs, ankles, and big toe in mid 2000 at which time her doctor told her to work only 20 hours per week, *id.* at 495; stopped working in 3/02 because of pain in her back and legs, *id.* at 496; lost her insurance from 12/04 to 10/05 during which time she saw no doctors, took all her prescription medicines until she ran out, and then took her mother's pain medicine, *id.* at 498-99; began seeing a physician again in 10/05, *id.* at 500; does not use any device, such as a cane, to get around but has a "grabber" to help her lift things, *id.* at 501; has tried over-the-counter medicines that were ineffective, while prescription medicine helps dull the pain but does not make it go away, *id.* at 502; had not taken her pain medication on the morning of the hearing and rated her pain at 5 on a scale of 10 at the time of the hearing, but her pain is typically an 8, 9, or 10 and is never below 5, *id.* at 503.

On 3/29/06, an SSA Administrative Law Judge (ALJ) issued a written decision denying disability benefits. Doc. # 9 at 21. He found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the plaintiff's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." Doc. # 9. at 19. The ALJ determined that plaintiff "has the residual functional capacity to perform light exertional work with occasional stooping." *Id.* at 18. In forming this conclusion, he relied on the reports of state agency consultants. *Id.* After considering testimony by a vocational expert that there were jobs in the national economy that the Engebretson could perform, the ALJ denied disability benefits. *Id.* at 19-20.

Plaintiff unsuccessfully appealed to the Social Security appeals council, *id.* at 3, so the ALJ's decision became the Commissioner's final decision. She then sought judicial review here, contending that the ALJ's decision is incorrect as a matter of law and is not supported by substantial evidence. Doc. # 1.

As noted above, the MJ advises remand to the Commissioner for further proceedings. Doc. # 18. He found that the ALJ erred by: (1) improperly assessing the plaintiff's subjective complaints of pain by offering a selective description of the evidence and failing to articulate his reasons for discrediting plaintiff's testimony; (2) failing to specifically address the plaintiff's ability to lift, carry, push, or pull; (3) improperly giving great weight to the testimony of non-treating medical consultants who failed to explain their opinions; and (4) failing to consider evidence of plaintiff's lupus diagnosis. *Id.* The Court will now consider the Commissioner objections. Doc. # 22.

### III. ANALYSIS

**A. Exceeding Scope of Judicial Review**

The Commissioner first argues that the MJ exceeded the proper scope of judicial review. Doc. # 22 at 2-3. A court reviewing a denial of social security benefits must "not reweigh evidence or substitute its judgment for that of the Commissioner, but instead review[ the] entire record to determine if the decision reached is reasonable and supported by substantial evidence. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

2

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir.1991) (judicial review of the Commissioner's legal conclusions is not subject to the substantial evidence standard). If the Commissioner fails to apply correct legal standards, or fails to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir.1982).

The Commissioner cites instances in which it believes the MJ exceeded the appropriate scope of review. For example, it objects that "the [MJ] raised facts that the plaintiff did not." Doc. # 22 at 5. But the MJ's duty is to review the *entire record* to see if the ALJ's decision is supported by substantial evidence -- not simply to consider the limited facts asserted in a plaintiff's brief. *See Cornelius*, 936 F.2d at 1145; *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981) (substantial evidence review requires the court to "scrutinize the record as a whole, and base [its] judgment on a fair examination of all that it contains") (cites omitted).

The MJ also concluded that, "[c]onsidering the record as a whole, it is not clear what level of work, if any, claimant can perform." Doc. # 18 at 14. The Commissioner argues that this is "demonstrative of the [MJ] assessing the record on his own rather than considering the support for the ALJ's findings." Doc. #22 at 8.

The Court disagrees. The MJ appropriately considered the support for the ALJ's findings and concluded that there was no substantial evidence to resolve the issue one way or the other. Reaching such a conclusion is consistent with substantial evidence review. *See Johnson v. Barnhart*, 138 F. App'x 266, 270-71 (11th Cir. 2005) (absent evidence supporting ALJ's findings, reviewing court concluded, "Considering the medical records as a whole, it is not clear what level of work, if any, [claimant] would be able to perform"). The MJ examined the entire record to determine whether (a) substantial evidence supported the ALJ's decision; (b) the ALJ applied the correct legal standards; and (c) the ALJ offered sufficient explanations. Therefore, this Objection is overruled.

**B. Lupus**

The R&R concludes that the ALJ erred by not considering plaintiff's lupus diagnosis in conjunction with her other conditions. Doc. # 18 at 15-17. Remand is required when "an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001) (remand was required when ALJ failed to consider chronic fatigue syndrome despite evidence in the record of diagnosis; ALJ should have acknowledged the condition and discussed why he disregarded it). As the Eleventh Circuit has explained:

> [W]here ... a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

*Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

3

The record reveals that Engebretson was diagnosed with lupus. Doc. # 9 at 201, 202, 231, 238. She referenced her lupus in the Reconsideration Disability Report that she submitted to the SSA. Doc. # 9 at 87. In her request for an administrative hearing, plaintiff stated that she stopped working because of "degenerative disc disease, depression, [and] lupus." Doc. # 9 at 94.

The Commissioner replies that "the exclusion of lupus from the ALJ's consideration is not determinative since the record does not show functional limitations from [claimant's] lupus," doc. # 22 at 6, and that "plaintiff has failed to show that lupus constituted a severe impairment." *Id.* at 4.

However, it is not necessary that Engebretson's lupus constitute a severe impairment on its own. 20 C.F.R. § 404.1523 ("we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). The relevant question is whether the combination of it and her other impairments, taken together, is disabling.[1] The ALJ was required to consider all impairments in the record. This Objection is therefore overruled.

## C. Medical Opinions of Non-Examining Consultants

The MJ concludes that the ALJ's Residual Functional Capacity (RFC)[2] finding was not supported by substantial evidence because it gave improper weight to certain expert opinions. The MJ noted that "[n]one of the treating physicians expressed an opinion regarding whether claimant has the ability to work, and the state consultants' evaluations alone simply cannot demonstrate 'substantial evidence,' as they are the unsupported conclusions of non-treating, non-examining physicians." Doc. # 18 at 14. The Commissioner objects, arguing that the weight given to the opinions of the non-examining state consultants was proper. Doc. # 22 at 6-11

The ALJ's decision relied on three RFC assessments created by state consultants. Doc. # 9 at 18; *see also id.* at 420-43 (containing consultants' assessments). Two RFC assessments, one from Dr. Pat Chan assessing disability from 3/21/02 to 12/29/04, *id.* at 428-35, and one from Dr. Robert Callear assessing disability as of 10/10/03, *id.* at 436-43, offer no explanation to support of their conclusions.[3] The third RFC

---

[1] The plaintiff was diagnosed with "dermatological lupus." Doc. 9 at # 202. There was "no internal involvement" and the condition improved with topical steroids and less sun exposure. *Id.* at 231. It is hard to imagine that this condition would have caused the ALJ to reach a different finding as to disability. However, the plaintiff claimed that lupus was one impairment that caused her to stop working, doc. # 9 at 94, so the ALJ should have considered it and explained his findings.

[2] Residual Functional Capacity measures a social security claimant's ability to do work-related activities. *See* SSR 96-8.

[3] It is asserted by the plaintiff, doc. # 11 at 20-21 (screen page 23-24), and the MJ, doc. # 18 at 14, that there was no explanation offered for any of the assessments. This is not entirely accurate. Chan's assessment for 3/21/02 to 12/29/04 says "See EWS" for an explanation. Doc. # 9 at 429. Similarly, Callear's assessment says "See physical R7C on EWS Summary" for an explanation. *Id.* at 437. The Court has scoured the record and cannot find an "EWS Summary" that explains the consultants' findings, and the Commissioner does not point to any such explanation. Since this Court's review is limited to the record, it agrees that the consultants provided no meaningful evidentiary basis for their
(continued...)

4

assessment offers a very limited explanation. On 1/24/04, Chan filled out an RFC assessment form that predicted that Engebretson would have the capacity for light work as of 6/30/04 -- six months in the future. His only explanation was, "Prior to [a motor vehicle accident] on 10/22/03 capable of light work. Had re-fusion at L5-S1 on 12/30/03. With normal healing, should be capable of the full range of light work within six months of the surgery."[4] *Id.* at 421.

The Commissioner contends that Chan's statement "very amply describes how the evidence substantiates Chan's findings." Doc. # 22 at 7. The MJ disagreed and so does this Court. Chan's statement alone offers no evidentiary support for plaintiff's ability to work from 3/21/02 -- the date plaintiff claimed disability -- to 10/22/03 -- the date on which plaintiff had an auto accident that was unrelated to her original claims of disability. Chan simply offered a conclusory statement that Engebretson was capable of light work during a portion of the time she claimed to be disabled (the 19 months prior to the car accident) -- *without* offering any supporting explanation.

The weight the ALJ gives to nonexamining sources "will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 404.1527(d)(3). The MJ properly concluded that it was an error for the ALJ to give "great weight" to these opinions since they were coupled with little or no supporting explanation. Doc. # 18 at 12-15.

---

[3](...continued)
conclusions.

[4] The car accident referenced was not the cause of the plaintiff's disability. It happened on 10/22/03 -- long after 3/21/02, when plaintiff claims to have become disabled. The doctor's assessment appears to address the question of whether the car accident exacerbated her condition.

The Commissioner argues that *Edwards v. Sullivan*, 937 F.2d 580 (11th Cir. 1991), supports reliance on the opinion of an non-examining physician (consultant) where that opinion is consistent with the findings of an examining physician. Doc. # 22 at 7. But in *Edwards*, the non-examining consultant provided a detailed explanation in support of her diagnosis. *See Edwards*, 937 F.3d at 585 (consultant's report "accurately reflect[ed] the results of the tests administered by [a treating physician]" and "provided an interpretation of [the claimant's] condition vis-a-vis the limitations those conditions placed on [the claimant's] abilities"). The central issue in this case -- whether the consultant provided an explanation for her diagnosis -- was not at play in *Edwards*. Thus, *Edwards* is inapposite.

The requirement that non-examining consultants sufficiently explain their conclusions ensures that their diagnoses are supported by the evidence and are not merely perfunctory. The Commissioner is correct to argue that "[i]t is not the function of judicial review to determine plaintiff's work capacity." Doc. # 22 at 8. But it *is* the function of judicial review to ensure that the weight given to non-examining consultants' opinions conforms to the law. The Court concurs with the MJ's conclusion that the ALJ erred in giving "great weight" to opinions of non-examining consultants when they provided little or no explanations for their findings. Thus, this Objection is overruled.

### D. Function-by-Function Analysis

Social Security Ruling 96-8 requires the ALJ to consider separately a disability claimant's capacity for sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8p. The MJ found that the ALJ erred in his RFC analysis because "he entirely omitted any discussion of claimant's

5

ability to lift, carry, push or pull." Doc. #18 at 12. The Commissioner objects, insisting that the ALJ's finding that plaintiff could perform "light work" *implicitly* encompassed a function-by-function analysis. Doc. # 22 at 10.

Additionally, the Commissioner notes that the functional analysis of pushing, pulling, lifting, and carrying were contained in the RFC finding. *Id.* To that end, the ALJ's decision cites directly to the RFC assessments contained in Exhibit 3F of the record. Doc. # 9 at 19. Those assessments rate separately the plaintiff's ability to lift, carry, push, and pull. *Id.* at 421, 429, 437.

The Court concludes that the ALJ's incorporation of those assessments into his written decision was sufficient to meet the requirement that each function be considered separately (even if the ALJ erred in giving them "great weight," *see supra* Part C). This Objection therefore is sustained.

### E. Omission of Testimony

The MJ found error with

the ALJ's omission of several important facts. In his decision, he noted that "[o]n a scale of 1 to 10, [claimant] rated her pain level on today at 5." He neglected to mention, however, that claimant testified that "today" was a good day and that on good days her pain level is at a five, but, on most days, her pain level is at eight, nine, or ten. Although the ALJ mentioned that claimant shops about once a week for groceries, he did not mention that she testified that she only goes shopping when she absolutely has to and that when she goes she is typically accompanied by her mother or husband.

Doc. #18 at 9-10 (cites omitted).

The R&R cites other testimony that the ALJ omitted from his decision -- including testimony that Engebretson has difficulty stooping because of her pain, that she must use a long shoehorn to put on her shoes and a "grabber" to pick up items from the floor, and that she is unable to clean, sweep, mop, vacuum, do dishes, or make her bed. *Id.* at 10 n. 4.

The Commissioner argues that, even if the ALJ did not address certain statements in plaintiff's testimony, he considered all that he needed to -- namely, plaintiff's statements that "she can stand/walk no more than 5 minutes; sit 30 minutes at one time; she must elevate her feet on a daily basis; and she has to lie down during the day about 6 hours due to pain." Doc. # 22 at 13.

When assessing a claimant's testimony, the ALJ should "state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990). "The evidence from the hearing is required to be recited in detail in the ALJ's written decision." *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985).

While this Court would not go so far as to say that the ALJ's factual recitation was (as implied by the R&R, *see* doc. # 18 at 10 n. 4) "results driven," it is clear that the ALJ's decision omits some important evidence bearing on the plaintiff's ability to work and her levels of pain. Again, the limitations claimed by the plaintiff should have been recognized in the ALJ's decision, and the ALJ should have stated the weight that he gave to such claims. Cognizant of the practical limitations on recounting every detail of testimony, the Court finds this to be a close call. Nevertheless, it concludes that the MJ appropriately advised remand back to the ALJ to address this omitted testimony.

### F. Pain Testimony

With respect to plaintiff's claims of pain, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." Doc. # 9 at 19. The MJ concludes that the ALJ improperly discredited the plaintiff's testimony. Doc. # 18 at 7. The Commissioner objects. Doc. # 22 at 11-12. The Court agrees with the MJ's finding that the ALJ's reasons for discrediting the plaintiff's testimony of the severity of her pain were not adequate.

An ALJ must "articulate 'explicit and adequate' reasons" for discrediting a claimant's testimony regarding pain. *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (quote omitted). "[T]he ALJ cannot reject the claimant's statements as to the intensity and persistence of her symptoms solely because they are not substantiated by objective medical evidence." *May v. Comm'r of Soc. Sec. Admin.*, 226 Fed.Appx. 955, 959 (11th Cir. 2007) (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). Yet, after finding that the medical evidence supported an impairment that could cause the alleged symptoms, the ALJ concluded that the same medical evidence does not support the plaintiff's alleged pain. The ALJ found:

> [T]here is no evidence that the claimant has received any recent treatment since October 2004. At that time, medical records showed only "mild" degenerative changes of the thoracic spine although she complained of some thoracic back discomforts. Also, lumbroscaral [sic] spine x-rays showed stable appearance of the fusion grafts and spinal instrumentation at L4[,] L5, and S1. The claimant was prescribed medications for her back muscle spasms and physical therapy to her upper back.

Doc. # 9 at 19.

The record shows, however, that Engebretson *had* received medical treatment since 10/04.[5] The mention of her medications and physical therapy says nothing as to whether her statements were credible. The only remaining explanations for discrediting Engebretson's pain testimony are based on the medical findings. Alone, such objective medical evidence is insufficient to discredit plaintiff's testimony as to the severity of her pain.

The Court emphasizes that it takes no position on whether the ALJ's *conclusion* might be supported by substantial evidence in the record.[6]

---

[5] This error, which could be characterized an oversight, omits the plaintiff's doctor's visit on 12/3/04. Doc. # 9 at 139. The ALJ may have made this statement to show that the plaintiff had abandoned medical treatment, and thus, could not have been in great pain. Alternatively, this statement may have been intended to simply indicate the time of the most recent medical evidence under consideration. In assessing credibility, it is appropriate for an ALJ to consider whether a claimant abandoned treatment. It is not clear if that was what the ALJ was doing here. The Court does not consider this an "explicit and adequate" reason for discrediting the plaintiff's pain testimony.

[6] Had the ALJ adequately articulated his reasons for denial of credibility, there would be evidence in the record to support such a conclusion. For example, during the plaintiff's hearing the ALJ asked, "on a scale of one to 10, one meaning very little, 10 being the kind of pain that would require you to go to the emergency room[,] what's your pain level right now?" Doc. 9 at # 502. The plaintiff stated that her pain level at that time was a 5, but that she was "typically" at an "eight, nine, 10." *Id.* at 503. To the ALJ's credit, there is nothing in the record showing that plaintiff ever went to an emergency room. While she testified that her pain *never* went below a 5, the record shows that reported a pain level of 2 on 11/18/02. *Id.* at 286. Furthermore, she does not use a cane, *id.* at 501, was reported to not be taking medications as of 8/28/03, *id.* at 147, was dieting and exercising as of
(continued...)

7

Rather, the Court finds error in *how* the ALJ's decision making process is reflected in his written decision. The law requires, after all, that

> [t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p. The ALJ simply did not meet this legal standard, so the Commissioner's Objection is overruled. The Court has carefully examined the defendant's objections to the Report and Recommendation of the U.S. Magistrate Judge. Some of defendant's criticisms of the R&R are potentially meritorious. Only in exceptional cases may the Court substitute its findings for the ALJ's conclusion. This is not such a case. There is a strong likelihood that the conclusion reached by the ALJ will be adequately documented on remand.

Remand therefore is appropriate. The Court is primarily concerned about (1) the ALJ's failure to address Engebretson's claimed impairment from lupus; (2) the lack of support behind the non-treating medical consultants' diagnoses; and (3) the ALJ's failure to adequately articulate and explain his reasons for discrediting the plaintiff's subjective testimony about her pain.

## IV. CONCLUSION

Accordingly, the Court *ADOPTS* in part and *REJECTS* in part the R&R. Doc. # 18. It thus *SUSTAINS* the Commissioner's Objection regarding the inadequacy of the ALJ's function-by-function, RFC assessment, but *OVERRULES* the Commissioner's remaining Objections.

This __6__ day of November, 2008.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[6](...continued)
4/27/04, *id.* at 98. And on 5/18/04 a doctor reported, "For the most part she is doing well. She still has some back discomforts on occasion." *Id.* at 143.

Bolstering plaintiff's credibility, in contrast, is Dr. Barbara Cortez's 10/28/03 report that "[s]he is unable to bend forward even slightly without [lower back pain] feels like her back is going to rip.... [S]he does not tolerate riding in a car for more than a few minutes due to [lower back pain]. *Id.* at 220. And on 7/9/04, a counselor described her as "having a lot of pain," *id.* at 97, after (on 12/3/03) referencing plaintiff's "overwhelming physical pain." *Id.* at 100. On 11/8/05 plaintiff reported a pain level of 10 to a nurse practitioner. *Id.* at 471. She also underwent two surgeries for her back, *id.* at 18, the second of which was performed due to "the disabling nature of the patient's symptoms and lack of response to conservative measures...." *Id.* at 363. There are also records of many visits to various doctors, therapists, and counselors during which the plaintiff complained of pain. *See id.* at 292, 300, 291, 289, 350, 378-81, 154, 256, 372, 278, 130, 179, 129, 102, 101, 234, 200, 97, 125, 470, etc.

So, the record evidence on this issue is mixed, making it all the more important for the ALJ to articulate explicit reasons for his credibility finding.